UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

UNITED STATES OF AMERICA

v.                               CRIMINAL ACTION NO. 5:24-cr-00090-1

TILFORD JOE BRADLEY, JR.

### MEMORANDUM OPINION AND ORDER

Pending is Defendant Tilford Joe Bradley, Jr.'s Motion to Suppress [ECF 220], filed September 3, 2024. On September 16, 2024, the Government responded [ECF 254] in opposition. On September 23, 2024, the Court held an evidentiary hearing. Mr. Bradley and counsel J. Miles Morgan appeared. Also present was Assistant United States Attorney Andrew Isabell. The Court heard testimony from three witnesses, Deputy United States Marshal Mark Waggamon, Sergeant William Ramey with the Raleigh County Sheriff's Department, and Officer Richard Sanchez with the Parkersburg City Police Department.

I.

On June 28, 2023, Deputy United States Marshals and officers with the CUFFED Task Force executed an arrest warrant on Heather Dunbar at her residence. Ms. Dunbar was accused of delivering a controlled substance. Hearing Transcript (hereinafter "Trans.") 7:4-5 (Waggamon); *see also* Trans. 37:1-3 (Ramey). Law enforcement learned upon arriving that Ms. Dunbar was not home; they were told she was at Mr. Bradley's 110 Copiniti Street residence. *Id*.

at 37:7-24 (Ramey). Task Force members knew the Copiniti Street residence "was associated with narcotic activity." *Id*. at 9:5-9 (Waggamon).

Upon entering the driveway of 110 Copinti Street, Deputy Marshal Waggamon saw near the back of the home a woman resembling Ms. Dunbar. *Id*. at 9:13-22. Law enforcement exited their vehicles. *Id*. Ms. Dunbar then "turned . . . and tried to" enter the residence. *Id*. at 9:19-22; *see also* Trans. 38:8-18. Law enforcement pursued and apprehended her "just feet away" from the back door. *Id*. at 10:12-20.

While detaining her at the residence threshold, law enforcement saw other individuals inside through the glass storm door. *Id*. at 10:9-11, 11:22-25, 30:19-22, 40:1-5; 63:9-15. For safety purposes, Deputy Waggamon ordered a male individual inside to assume the prone position. *Id*. at 30:23-31:7. Law enforcement then entered to secure all within. *Id*. at 63:9-64:7. Specifically, Officer Sanchez testified, *inter alia*, the residence's drug trafficking reputation contributed to his concerns about the "unpredictability [of] those people, and the potential for weapons[.]" *Id*. at 64:2-7. They performed a sweep, cuffed all individuals within and moved them outside. *Id*. at 64:16-25.

According to Sergeant B. Acord's Supplemental Report, the sweep disclosed "a back pack [*sic*] with drug paraphernalia and small bags with what appeared to be powder residue in the basement area of the residence." [ECF 254-1 at 2]. The five individuals apprehended, including Mr. Bradley, indicated the use and distribution of controlled substances at the residence. [*See id*. at 2-3]. Notably, Mr. Bradley told Sgt. Acord of (1) "a small amount of dope in his safe," and (2) $600 in a drawer from selling drugs. [*Id*.]. He also said (1) "everyone living at the residence sells drugs out of the house," [*Id*. at 2], and (2) "there was a good amount of Fentanyl and Crack" located "in a box on the top shelf of the first room on the right." [*Id*. at 3].

2

These statements resulted in a search warrant obtained that day. [*See* ECF 263-1]. Officers recovered, *inter alia*, approximately fifteen grams of marijuana, thirty-nine grams of fentanyl, sixteen grams of cocaine, two grams of methamphetamine, and $724.00. [ECF 254-2 at 2].

Mr. Bradley was arrested and charged with possession with intent to distribute controlled substances. His Mirandized statement admitted to distribution of controlled substances and supplier identities. Mr. Bradley initially agreed to work as a confidential informant. [*See* ECF 254 at 3]. His lawyer later ended the arrangement. [*See id.*].

Months later, a confidential informant arranged a controlled methamphetamine buy from Mr. Bradley. [*Id.*]. Ms. Dunbar, however, distributed the drugs to the informant at the residence. [*Id.*]. A similar methamphetamine transaction conducted personally by Mr. Bradley happened later. [*Id.*]. And at that time law enforcement saw one of his suppliers outside the residence. [*Id.*]. The Government was then authorized to do a wiretap investigation on Mr. Bradley and Ms. Dunbar's phones. [*Id.*]; [*see also* ECF 220-3 (Affidavit in Support of Wiretap)].

On May 29, 2024, a twelve-count indictment was returned charging Mr. Bradley, Ms. Dunbar, and nine other co-defendants. Mr. Bradley is charged in Counts I, II, V, and IX, respectively, with conspiracy to distribute fentanyl and cocaine base, distribution of fentanyl, and possession with intent to distribute methamphetamine (Counts V and IX).

On September 3, 2024, Mr. Bradley moved to suppress, alleging an illegal entry into his home. [ECF 220 at 2]. He asserts that Ms. Dunbar's arrest was followed by the putative illegal entry, which was then likewise followed by the allegedly necessarily tainted search warrant, inculpatory statements and "wire taps, surveillance, and controlled buys." [*Id.*].

He relies on *Steagald v. United States*, 451 U.S. 204 (1981), which held an arrest warrant for a third-party cannot be used to support a warrantless home search of another absent consent or exigent circumstances. He asserts, *inter alia,* Ms. Dunbar did not live at the home, there was no reason to believe she was destroying evidence or fleeing, and no threats to officer safety were present. [*Id*. at 6].

The Government responds principally that exigent circumstances existed based upon Ms. Dubar's attempted flight into the residence, the drug activity at the location, and the presence of multiple other individuals in close proximity inside. [*See* ECF 254 at 6].

## II.

### A. *Governing Standard*

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and.'" *United States v. Brinkley*, 980 F.3d 377, 383 (4th Cir. 2020) (quoting U.S. Const., amend. IV.). "In most cases, a search or seizure is unreasonable unless authorized by a warrant." *Id*. "The warrant requirement carries special force when police seek to enter a private home, which is 'afforded the most stringent Fourth Amendment protection.'" *Id*. (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976)). "'With few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered no.'" *Id*. at 383-84 (quoting *Kyllo v. United States*, 533 U.S. 27, 31 (2001)).

Nonetheless, "[i]n some circumstances, an arrest warrant can . . . allow officers to enter a home in order to apprehend a suspect." *Id*. at 384. When police officers seek to enter a home armed with an arrest warrant, "the Fourth Amendment imposes specific and different requirements for entry based on whether the home is the suspect's own residence or someone

4

else's." *Id*. When the home of a third party is involved, the Supreme Court has deemed an arrest warrant generally insufficient to enter the third-party residence absent exigent circumstances or consent. *Brinkley*, 980 F.3d at 384 (citing *Steagald*, 451 U.S. at 216). The "hot pursuit of a fleeing suspect" constitutes exigent circumstances justifying a warrantless entry. *Kentucky v. King*, 563 U.S. 452, 460 (2011); *see also United States v. Willis*, 443 Fed. App'x 806, 808 (4th Cir. 2011). One other exception to the warrant requirement is for protective sweeps, which are a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Protective sweeps are designed to surface other persons within who are dangerous or could unexpectedly "'launch an attack.'" *United States v. Everett*, 91 F.4th 698, 709 (4th Cir. 2024) (quoting *Buie*, 494 U.S. at 333). But law enforcement must have "articulable facts . . . [with] rational inferences . . . warrant[ing] a reasonably prudent officer in believing that" the subject area harbors one posing a danger. *Id*. "[A] generalized worry of danger" will not suffice. *Id*. (quoting *United States v. Jones*, 667 F.3d 477, 484 (4th Cir. 2012)).

Our Court of Appeals has concluded the protective sweep doctrine within a home applies when there is "an arrest occurring just outside . . . ." *Jones*, 667 F.3d at 485 n.10; *see also Everett*, 91 F.4th at 705 n.3 (cleaned up); *United States v. Hull*, 239 Fed. App'x 809, 810 (4th Cir. 2007).

B.  *Analysis*

When arresting the fleeing Ms. Dunbar at the threshold of a known drug house, law enforcement observed individuals inside through the glass storm door. The known presence of these individuals, along with the preceding facts, give rise to a reasonable belief that dangerous individuals may lurk within. *See*, *e.g.*, *Jones*, 667 F.3d at 485 (upholding a protective sweep given

5

the "presence of . . . seven vehicles [parked on the premises] coupled with . . . prior surveillance of known meth users patronizing the . . . residence"); *United States v. Wingrove*, No. 2:19-00176, 2019 WL 5777646, at *5-6 (S.D.W. Va. Nov. 5, 2019) (collecting cases) (recognizing "[a]ttempted flight is an additional factor that several courts have found is a relevant articulable fact" justifying a protective sweep, and "[c]ourts consistently find that drug trafficking, when combined with other articulable facts, creates a reasonable belief that other dangerous persons are nearby."); *see also United States v. Meza-Corrales*, 183 F.3d 1116, 1124 (9th Cir. 1999) (same).

Inasmuch as the protective sweep was justified, it was proper to use evidence found in plain view as grounds for the subsequent search warrant. There is no basis for a suppression order.

### III.

Based on the foregoing discussion, the Court **DENIES** Mr. Bradley's Motion to Suppress [**ECF 220**].

The Clerk is directed to send a copy of this written opinion and order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: December 16, 2024



Frank W. Volk
Chief United States District Judge